**In re A. Ray REID, Jean B. Reid, Debtors.**

**Bankruptcy No. 89–00361–A.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Nov. 8, 1989.

James E. Sharp, Barbara Straughn Harris, Washington, D.C., for debtors.

Thomas E. Cabaniss, Ann R. Bergan, McGuire, Woods, Battle & Boothe, Norfolk, Va., for Sovran Bank.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

This matter is here upon issues concerning the cross-motions for summary judgment filed by A. Ray and Jean B. Reid ("Reids" or "debtors") and Sovran Bank ("Sovran" or "the Bank") in the involuntary case filed by Sovran against the Reids.

On February 27, 1989 Sovran Bank filed an involuntary petition in bankruptcy against the Reids as their sole creditor. The Reids filed an answer and a motion for summary judgment. In its motion, the debtors reviewed the context in which the petition was filed. According to the debtors, Sovran Bank filed two complaints in the Circuit Court for Culpeper County, Virginia on January 13, 1989, both of which named the Reids as co-defendants.[1] The complaints alleged that the Reids were the guarantors of three promissory notes to Sovran Bank which were in default. In the first action, the Reids denied liability on the basis that the guaranty was cancelled in 1987, and that prior to its cancellation, the Reids' guaranty was limited to $300,000.00.[2] In the second action, the Reids in essence asserted that Sovran fraudulently induced the Reids to enter into a second guaranty, by promising to cancel the guaranty that was the subject of the first action.[3] The debtors then explained that both state actions were still pending in Culpeper County and that no judgment had been entered in either case.

With respect to the grounds upon which the debtors objected to the involuntary filing, the debtors first assert that under Section 303(b)(2) of the United States Bankruptcy Code ("The Code") Sovran improperly filed the involuntary petition as a sole creditor because the Reids have in excess of twelve creditors. See 11 U.S.C. § 303(b)(2) (requiring three petitioning creditors to commence an involuntary peti-

---

1. See Debtors' Exhibit 1 (complaint of *Sovran Bank, N.A. v. Moriah Corporation, A. Ray Reid, Jr. and Jean B. Reid,* Civil Action No. 8–L–89); Debtors' Exhibit 2 (complaint of *Sovran Bank, N.A. v. Moriah Data Systems, Inc., A. Ray Reid, Jr., and Jean B. Reid,* Civil Action 9–L–89).

2. See Debtors' Exhibit 3 (Answer filed in Civil Action 8–L–89, ¶ 3).

3. See Debtors' Exhibit 4 (Answer filed in Civil Action No. 9–L–89, ¶ 3.)

tion against a debtor who has more than twelve creditors). Second, the debtors maintain that Sovran's petition failed to comply with Section 303(b)(1) of the Code which requires that the debts of the petitioning creditor(s) cannot be subject to a bona fide dispute. 11 U.S.C. § 303(b)(1). Third, the Reids contend that Sovran could not establish that the debtors were generally not paying their debts as they became due, as required by Section 303(h)(1) of the Code. 11 U.S.C. § 303(h)(1). In view of Sovran's inability to meet the statutory prerequisites for filing an involuntary petition, the debtors alleged that they were entitled to a summary judgment in their favor.[4]

In response, Sovran has filed its cross-motion for summary judgment alleging generally that the Reids had fewer than twelve creditors, that Sovran's claims are not subject to a bona fide dispute, and that the Reids "[we]re not paying their debts to Sovran."[5]

A hearing was held on the cross-motions on June 23, 1989, at which time the parties reviewed the context in which the involuntary petition had been filed, which had been described only by the debtors in the pre-trial filings. Sovran's version of the facts differed slightly from that of the debtors, but Sovran ultimately acknowledged that the promissory notes and guaranties in question were the subject of suits filed by Sovran in the Circuit Court for Culpeper County. Transcript of Hearing on June 23, 1989, p. 10 (hereinafter "Tr. Hearing").

Sovran then elaborated upon the reasons why it filed the involuntary petition against the Reids. Counsel for Sovran represented:

Subsequent to filing the suit [in state court], Sovran had a lien search done of the filings on the record, the land records of Culpeper County, and discovered that in early December 1988 that a deed of trust, a credit line deed of trust, for $750,000 in favor of the Second National

Bank of Culpeper was filed against all the real estate that the Reids owned, which constitutes their primary assets, and Sovran advised Mr. and Mrs. Reid through their counsel that it felt that there was a preference and eliminated any possibility of any resolution of their payment of their debt over time. The Reids were well advised in advance that Sovran felt the necessity to protect itself against this preference, being an unsecured creditor as against the Reids, and the Reids and their counsel were given adequate advance notice that Sovran felt the time limit for taking action to protect Sovran for that preference that was given would run the end of February. Despite the fact that everyone was well advised of that, no meeting could be arranged prior to the running of the time period and thus the petition was filed. So that explains why we are here and why Sovran feels that we are entitled to protection under the Bankruptcy Code because of this preferential treatment of one creditor against the other.

. . . .

. . . . That's the purpose of why we are here and why we are not litigating this in Culpeper County, because there is no basis under Virginia law to void a preference. The only basis to void a preference is under the Bankruptcy Code, and that becomes important in analyzing some of the requirements of Section 303 that Sovran has to meet given the existing case law in order to bring this involuntary petition.

Tr. Hearing, pp. 10–12.

Having outlined the posture of the case, the parties then summarized their substantive positions for the Court. The issue upon which both the Reids and the Bank focused was whether the debtors had in excess of twelve creditors. In conjunction with the debtors' Memorandum in Support of their Motion for Summary Judgment,

---

**4.** The Reids also claimed that they were entitled to costs, attorney's fees, and punitive damages.

**5.** Memorandum in Support of Sovran's Motion for Summary Judgment, p. 2. We note here that the debtors filed an opposition to Sovran's motion for summary judgment, to which Sovran replied by memorandum as well.

the Reids had filed a list of debts which identified 22 different creditors.[6] Counsel for the Reids argued, therefore, that Sovran filed the involuntary petition improperly as a single creditor and noted that the *de minimis* rule, which excludes from the count of creditors holders of small claims, should not be applied. Tr. Hearing, p. 4.

Sovran responded by noting that thirteen of the twenty-two creditors named had claims of less than one hundred dollars. Tr. Hearing, p. 13. It asserts that small creditors should not be counted in involuntary cases, a policy which Sovran alleges was reflected in the section of the Bankruptcy Code that does not permit a creditor with a claim of less than $50 to participate in a 341 meeting. *Id.* (citing *Denham v. Shellman Grain Elevator, Inc.* 444 F.2d 1376 (5th Cir.1971)); *In re Blaine Richards & Co.,* 10 B.R. 424 (Bankr.E.D.N.Y. 1981); *see* Bankruptcy Act § 56(c), 11 U.S.C. § 92 (repealed). Counsel for Sovran also suggested that secured creditors should not be counted as creditors of the debtor as of the date the petition was filed. Tr. Hearing, pp. 14–15.

■ In ruling on this matter, this Court identified the issue of the number of the debtors' creditors to be the threshold issue. Transcript of Court's Ruling, p. 2 (hereinafter "Tr. Ruling"). Acknowledging that although there was case law adopting the *de minimis* rule, the Court noted that "regardless of how wise and salutary the exclusion of small, recurring claims might be, Congress has not specifically authorized exclusion, and in the absence of any indication that Congress intended this exclusion, we have no authority to engraft it onto those [exceptions] that Congress expressly provided." Tr. Ruling, pp. 2–3 (quoting *In re Rassi,* 701 F.2d 627, 632 (7th Cir.1983)). This Court further noted that the $50 rule preventing creditors from voting, was not in the Code. *Id.,* p. 3. The Court also declined to exclude secured creditors from the count of creditors for the same reason. *Id.,* p. 5.

In the midst of the Court's ruling, Counsel for Sovran again addressed the Court on the issue of *de minimis* claims, and Counsel for the debtors felt obligated to respond. Perhaps due to the extended argument, it is apparent from the transcript that the ultimate ruling of the Court was overshadowed. The Court continued its ruling as follows:

Furthermore, because of the admitted and very candid—the Court appreciates that, as well as the way in which this case was presented—that there is a preference here, I don't know that there is a preference. You don't file bankruptcy to set aside preferences in the first instance. You have to prove the case. This is a classic case for abstention by the Court. Accordingly, I rule that there are more than twelve creditors and that the Court will abstain and let this matter be heard by the state [c]ourt.

Tr. Ruling, pp. 8–9.

■ Under Section 305 of the Bankruptcy Code, a court after notice and a hearing may abstain from presiding over a case under Title 11 *"at any time,* if—(1) the interests of creditors and the debtor would be better served by such dismissal or suspension[.]" 11 U.S.C. § 305(a)(1); *see In re Odom Enter., Inc.,* 22 B.R. 785, 791 (Bankr.E.D.Ark.1982) ("abstention under the literal provisions of section 305, may be undertaken by the court *sua sponte* [.]"). It was the opinion of this Court that abstention was in the best interests of the creditors and the debtor in view of the fact that state court proceedings addressing the parties' dispute were in progress. This Court also took note of the fact that Sovran admittedly filed the involuntary petition solely to set aside a preference which may be adequately addressed in Virginia courts and that Sovran had failed to comply with the relevant provisions of the Bankruptcy Code. It is clear that Sovran Bank filed the petition with an insufficient number of petitioning creditors, and based the petition upon claims that were the subject

**6.** *See* Debtors' Exhibit 5, ¶ 20 (Affidavit of A. Ray Reid, Jr.) and Exhibit E appended to Exhib-

it 5 (List of debtors' creditors).

of a bona fide dispute, contrary to 11 U.S.C. § 303(b)(1) of the Code. *See In re Tarletz,* 27 B.R. 787, 794 (Bankr.D.Colo. 1983) (noting that use of the bankruptcy court as a routine collection device would quickly paralyze the courts; the question then becomes whether the bankruptcy court or the state court would better serve the interests of the creditors).

This Court became aware of the parties' misinterpretation of the final ruling when a "Notice of Appeal" was filed in this Court. Under subsection (c) of § 305, "[a]n order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, ... is not reviewable or otherwise." 11 U.S.C. § 305(c). Upon a reexamination of the order which was submitted to the Court for entry in this case, we find that this Court's Order entered on August 22, 1989 did not accurately reflect the opinion of this Court and must be vacated. An appropriate order shall enter which reflects the findings of this Memorandum Opinion.[7]

---

**7.** Generally, the timely filing of a notice of appeal " 'divests the district court of authority to proceed further with respect to such matters, except in aid of the appeal[.]' " *DuBuit v. Harwell Enters., Inc.,* 540 F.2d 690, 693 (4th Cir. 1976) (quoting 9 *Moore's Federal Practice,* ¶ 203.11). Actions in aid of appeal "include

those intended to ensure that the district court is afforded a complete understanding of the proceedings in the bankruptcy court." *In re The Barrick Group, Inc.,* 100 B.R. 152, 154 (Bankr.D. Conn.1989). We have filed this memorandum opinion to clarify the actual basis of this Court's ruling, in aid of the appeal.